## Service Fire Ins. Co. v. Roundtree.

Nov. 10, 1942.

Frank M. Drake and Tye & Siler for appellant.

Leonard S. Stephens for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Lester Roundtree insured a 1940 model three-quarter ton Ford truck with the Service Fire Insurance Company for $745 in February, 1940. He suffered a loss by

theft and fire on August 20, 1940. The truck had been driven about 5,000 miles at that time. The claim was referred to an adjuster by the name of Patterson, not an employee of the Insurance Company. Patterson and Roundtree discussed the loss and it is the contention of the Company that Roundtree signed a loss and damage agreement on September 27th, whereby he accepted $343.01 as a full settlement, and that this agreement was witnessed by Patterson and Etta Dinsmore, an employee of Roundtree. As a result of this alleged agreement the Company paid the $343.01 to the Universal Credit Company which had a mortgage on the insured truck on October 8th. Roundtree's position is that he did not make any final agreement with Patterson as to the full amount of the loss and the aforementioned agreement is a forgery. He brought this action to recover $401.99, the difference between the amount of the policy and the amount paid by the Insurance Company to the Credit Company. He was successful in his action and this appeal is from the judgment in his favor.

Several grounds are urged for reversal, but having reached the conclusion that the judgment must be reversed because of the highly improper argument of counsel for Roundtree, we deem it unnecessary to discuss separately the other grounds urged save the question of a tendered amended answer.

Within six or seven weeks after the execution of the alleged settlement agreement Roundtree employed an attorney to take up the matter with the Insurance Company. The petition was filed in February, 1941. On March 27th, Roundtree's attorney wrote a letter to the attorney for the Insurance Company in which he said:

"* * * You contend that you have a signed agreement by the Insured whereby he released your client for the sum of $343.01, and after carefully going over the matter with my client I cannot see wherein your adjuster obtained my client's signature to any such agreement. If that is your defense our reply will be a general denial and the issue will have to be determined by the jury. At no time did my client and the Adjuster reach an agreement as to the amount of the loss or the damage. No signature of my client's could have been obtained without a gross fraud. But since you claim you have such a document would you produce the agent or Adjuster or

representative of your client who claims to have obtained such a signature for the purpose of taking his deposition as if under cross-examination? I would like to take his depositions as if under cross-examination if same could be conveniently arranged for both parties. * * *''

On March 29th, the Company's attorney made the following reply:

"As to your request that I make arrangements for you to take the deposition of the Adjuster, I cannot tell you about that right now, as I would have to find out who he was and just what his plans are for the near future.

"I observe that your client evidently informed you that he did not sign any agreement fixing the loss at $343.01; and that he claims that, if we have any such document, it was fraudulently obtained. While, of course, I respect your repeating what your client told you, I think you realize that reputable insurance companies do not have adjusters who attempt to deal with losses in that manner.

"I am arranging to get in touch with the adjuster who handled this claim, and hope to be able to write you again about the matter before your court begins on April 7th.''

It can be seen from the foregoing correspondence that Roundtree was taking the position that he had never made any such settlement as contended by the Company. It was indicated also that he desired to take the deposition of the adjuster. The adjuster's deposition was never taken, and when the Company filed its answer on the 5th of August it asked that a reply be filed by Roundtree immediately. In the reply which was filed on August 7th it was claimed that the alleged settlement agreement was a forgery. An amended answer was tendered, but the trial judge refused to permit it to be filed.

Before the trial commenced a motion was made by the Company for a continuance until the next term. The motion was supported by an affidavit of its attorney, as provided in Section 315, Civil Code of Practice. It was set out in this affidavit that Patterson entered the military service of the United States in July, 1941, and was then out on maneuvers somewhere in Mississippi. It was urged that the Company should be given an opportunity

to secure the testimony of this witness because of the surprise issue of forgery. This motion was overruled. In the attorney's affidavit there was included a statement as to how Patterson would testify as to the alleged settlement agreement. There was no attempt made to say that that would be the extent of Patterson's testimony. The trial court permitted to be read to the jury the statement as to how Patterson would testify on the question of the settlement. The Company earnestly insists that, since Patterson was its only witness on the issue of forgery, and since that question was brought into the case by way of reply only a few days before the trial, obviously it had no opportunity to have Patterson at the trial or even to get his deposition, since his whereabouts were unknown. The argument would be more impressive were it not for the aforementioned correspondence between opposing counsel. The Company was put on notice in March that Roundtree was going to contend that he had never agreed to settle his claim in full for $343.01, and, furthermore, the Company was advised that Roundtree wanted to take Patterson's deposition. We have noted that Patterson did not enter the Army until July. We think, therefore, that the trial court properly overruled the motion for a continuance, notwithstanding our feeling that Patterson's direct testimony on the stand would have been much more favorable to the Company than the reading of the statement setting forth the manner in which he would testify as to the settlement.

Roundtree's attorney made the following comment relative to the Patterson statement in his argument to the jury:

"Counsel for the plaintiff in his argument stated that the Patterson affidavit read to the jury was not signed by the witness Patterson; that he and his client did not know why the witness Patterson was not here but that we knew why he was not here, and that the reason he was not here was because defendant was afraid to have him here because they knew he forged this instrument and was not willing to subject himself to cross examination; * * *."

There was a motion to set aside the swearing of the jury following this statement, which motion was overruled. The record contains this statement as to why the motion was overruled:

"Which motion the court overruled, stating that same was upon the grounds that counsel for the defendant argued the case as if testifying, during his argument, to facts which appeared to be known only to him, and in response to that testimony in argument the counsel for the plaintiff responded in kind, also testifying to facts much as if he had been a witness, during his argument, and his response was pertinent to the statements made by counsel for defendant, hence the motion made by defendant is overruled, and to that ruling of the court the defendant excepts."

The foregoing statement shows that it was the view of the trial judge that the statement made by Roundtree's attorney was warranted by statements made by the attorney for the Company. We are unable to determine the basis of this view, since the record does not contain the alleged statements of the attorney for the Company. So, as the record stands, we have before us only the statement of Roundtree's attorney to which complaint is directed. Obviously, it was highly prejudicial to the Company's rights. Not only was it said that Patterson did not sign the statement, but that the attorney knew the reason why Patterson was not present was because the Company knew that he had forged the instrument and that he would be unwilling to subject himself to cross examination. Roundtree's attorney knew that this statement was untrue, because he was apprised of the reason for Patterson's absence in the affidavit for the continuance. Furthermore, his statement as to the forgery of the instrument and Patterson's unwillingness to subject himself to cross examination was wholly unwarranted, and, obviously, was made with the view of inflaming the jury against the Company. It was not a comment upon or a deduction to be drawn from the Patterson statement. As pointed out in the case of Madisonville, etc. R. Co. v. Allen, 152 Ky. 706, 154 S. W. 5, counsel for the adverse party has only the right to criticize and comment upon the statements in such an affidavit in the same manner and extent as he would have to comment upon the testimony of a witness, if the witness had testified before the jury or had given his deposition. See, also, Gunterman v. Cleaver, 204 Ky. 62, 263 S. W. 683.

The tendered amended answer set forth that Roundtree had not filed a proof of loss within 60 days after the

loss. The policy provided that failure to file proof of loss within the time specified would cause a forfeiture of the policy. We think the trial court correctly refused to permit the amended answer to be filed. The loss occurred on August 20th, and, unquestionably, some agreement was entered into by the adjuster and Roundtree on September 27th, because Roundtree is not attempting to collect on the whole policy, but only the difference between $745, the amount of it, and $343.01 paid to the Credit Company. Before the end of the 60-day period the Company had paid to the Credit Company the amount which it contends was full settlement on the policy. The circumstances show clearly that there was a waiver on the part of the Company of the filing of the proof of loss.

It follows that it is our view that the judgment should be and it is reversed, with directions that it be set aside and for proceedings consistent with this opinion.